The Chancellor.
If the legality of this transaction can be maintained, then it follows that after a bank has become so hopelessly insolvent that the directors have been forced to the conclusion that it is incumbent upon them át once to close the doors of the bank, and abandon the *17 objects for which the institution was incorporated, they may employ the last half hour of existence in parcelling out to favorite creditors the few remaining assets of the bank still within their control. Nay, it follows that the cashier of the bank may, after the directors have declared the bank insolvent, and have determined to notify the public of its insolvency before the directors can reach the door to post up such notice, dispose of the assets at his pleasure to the creditors of the bank. Tor this is not the case contended for by the counsel, that the cashier of a bank may lawfully meet all demands made upon it up to the moment the bank suspends payment. This he may do under ordinary circumstances ; and all such payments are valid. But can he stand behind the counter, and while he is dealing out to importunate creditors their legal demands with one hand, with the other place the assets of the bank in his pocket for absent friends and favorites ? The diligent creditor may acquire rights which the law will not disturb. There is a distinction between a voluntary preference of a creditor by the debtor, and a payment forced from him by an importunate creditor. This distinction is fully recognised in the administration of the law1- in reference to bankrupt acts. It has not been made, as was supposed by counsel, in consequence of any peculiar provision in bankrupt laws respecting such payments, but upon broad principles of justice to carry out the object of those law’s.
The object of “ the act to prevent frauds by incorporated companies” is to secure to the creditors of such institutions an equal distribution of its assets. This is the primary object of the statute. Any act done with the view and for the purpose of defeating this object, is a fraud upon the act, and is illegal.
The primary object of this act being the same as that of the bankrupt laws, in giving a construction to it we may properly examine those general principles which have been established by the courts in reference to trans *18 actions under those laws. And I may remark here, that our courts have always recognised the object and provisions of the act in question, and the bankrupt laws, to be essentially the same. In the case of The State Bank v. Receivers of the Bank of New Brunswick, 2 Green’s Ch. R. 270, the Chancellor says, “the general object of the act, and the provisions made to effect it, are essentially the same as the bankrupt laws: and if this act is to be considered as partaking of the character" of a bankrupt law, it is proper to- apply to it the general rules that govern the system where it is in use.” In the case of the complainants in this present suit against “ The Paterson Gas Light Company”' (3 Zab. 291), the- Chief Justice says, “the act to prevent frauds by incorporated companies, so far as relates to. the estate of an insolvent corporation, is, in all its essential elements, a bankrupt law.”
Let us see, then, how the transaction in question will bear the test of those general principles which the courts have applied to like acts under bankrupt laws.
In the case of Ogden and Thomas v. A. Jackson, 1 Johns. Rep. 378, Spencer, J., delivering the opinion of the court, says, “ Courts of law consider the properly of the bankrupt completely at his disposal before the act of bankruptcy committed, so far as to protect a creditor in the receipt of money or the acquisition of goods, if done in the usual course of business indeed, if money be obtained, or security given, when a bankruptcy is inevitable, and even contemplated by the bankrupt, such acts are valid, if the effect of measures taken by the creditor. It will not, however, be permitted that a person, insolvent at the time, and contemplating an act of bankruptcy, should parcel out his estate to such creditors as he may see fit to prefer; this is opposed to the very genius of the bankrupt laws, which proceed upon a principle of equality and a just distribution.” Also Harrison v. Sterry, 5 Cranch 301.
These decisions were made in reference- to the bankrupt *19 law of 1800. In that law there is bo provision declaring preferences invalid, and the decisions were not made in contemplation of any particular provisions of the act y but the principle applied was, that the preferences were in violation of the spirit and general tendency of the act, and defeated its primary object. I mention this circumstance because counsel laid great stress on the fact, that in the act we are considering there is no particular provision avoiding such preferences.
In Alderson and others’ Assignees v. Temple, 4 Burr. 2240, Lord Mansfield says, “ if a bankrupt in course of payment pays a creditor, this is a fair advantage in the course of trade; or if a creditor threatens legal diligence, and there is no collusion, or begins to sue a debtor, and he makes an assignment of part of his goods, it is a fair transaction, and what a man might do without having any bankruptcy in view.” But it never entered into the head of any judge to say, “ that a man, in contemplation of an act of bankruptcy, could sit down and dispose of all his effects to the use of different creditors, for that would be a fraud upon the acts of bankruptcy. But if done in a course of trade, and not fraudulent, it may be supported.”
How can it be said, that this was a payment made in the usual course of dealing 1 It was the case of an ordinary deposit in the bank. No demand was made by the creditor. It was not made in the ordinary way. The payment was not in money, but in promissory notes. It was not made to the creditor, or to his authorized agent. It was this, and nothing more or less,—one of the directors of the bank put the note in his pocket to deliver to the creditor, for the purpose of giving him a preference, to which he was not entitled by any diligence of his own.
See, also, Linton, assignee, v. Bartlet, 8 Wil. 47; Harman v. Fisher, Cowp. 124.
But it appears to- me that the transfer of these notes was in direct violation of the second section of the act. *20 It was an assignment and transfer in contemplation of the insolvency of the company; and such a transfer, the act declares, shall be utterly null and void as against creditors. But it was said, that it was not intended, by this provision, to invalidate all acts done in the ordinary course of business. Admit it: but can an act which is done in contemplation of bankruptcy, a voluntary preference which is given to a creditor for the sole purpose of giving him an advantage over other creditors, and under the circumstances which, in this case, the transfer was made, be said, with any propriety, to be made in the ordinary course of business ? In the case referred to in Burroughs, Lord Mansfield said of the transfer in that case, “ It was not done in the ordinary course of trade ; for there never was any dealing between the parties in sending endorsed notes.” With equal force and propriety may it be said in this case, there never was any dealing between the parties in paying ordinary deposits by the promissory notes of individuals.
Again. It was asked, in argument, where was the necessity of the act providing that an injunction should be issued to restrain the company, its ofiicers and agents, from paying out, selling, assigning, or transferring any of the estate, moneys, funds, &c., of the said company, if such transfers were void without the injunction ? The answer, I think, is obvious. The injunction prohibits all payments and transfers. Without the injunction, they were all valid, except such as were fraudulent; and all were fraudulent which were made in contemplation of bankruptcy, and for the purpose not of paying their debts in the ordinary course of business, but to defeat the object of the act, and, in view of insolvency, giving an undue preference to particular creditors. It is very plain to be seen that a bank may be in such a condition as to render it very proper for the court to interfere by injunction under the act; and yet, without such interference, the directors might go on bona fide in the ordinary transaction *21 of the business of the hank, and all transfers made under such circumstances would be good. Why ? Because they were made not in contemplation of bankruptcy, but to prevent that very catastrophe. The payment or transfer of property in the usual course of trade, if made to sustain the bank, and continue its business, is a bona fide payment or transfer. If contemplating bankruptcy, and in view of that, and to secure some advantage on that account, such payment or transfer is made, it is Hot bona fide, hut defeats the object of the act, and on that account is unlawful.
The complainants are entitled to a decree in their favor.